**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**HAROLYN H.,[1]**

        **Plaintiff,**

                                **Civil Action 3:23-cv-008**
**v.**                            **Judge Walter H. Rice**
                                **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Harolyn H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7).   For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

I.       BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on July 22, 2019, alleging that

she has been disabled since January 1, 2019, due to Bipolar disorder, post traumatic stress disorder

("PTSD"), anxiety, major depressive disorder, degenerative disk disease, and spinal stenosis.  (R.

at 314-15, 318-24, 365.)  Plaintiff's applications were denied initially in July 2020 and upon

reconsideration in October 2020.  (R. at 61-126, 129-38.)  Plaintiff sought a *de novo* hearing before

an administrative law judge ("ALJ").  (R. at 159-90.)  ALJ Noceeba Southern held a telephone

hearing on October 6, 2021, at which Plaintiff, who was represented by counsel, appeared and

testified.  (R. at 40-60.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)   On

December 14, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the

meaning of the Social Security Act.  (R. at 16-39.)  The Appeals Council denied Plaintiff's request

for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)

II.      RELEVANT RECORD EVIDENCE

A. Relevant Reports to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's relevant reports to the agency and hearing testimony as

follows:

> [Plaintiff] testified, or elsewhere alleged, that she could not work due to a number
> of impairments and related symptoms (see also Exhibits 7E; 8E). She reported neck
> and back pain, indicating that she had been to physical therapy and the neurologist
> for treatment. She reported using a transcutaneous electronic nerve stimulation
> (TENS) unit to relieve the tension and doubling up on medication, but feels like she
> has gotten worse. Specifically, she noted that sitting and standing make her pain
> worse. Mentally, [Plaintiff] reported paranoia and nightmares. She reported
> hallucinations and difficulty focusing and concentrating. She indicated she felt like
> people are looking at her. As for her daily activities, she reported spending a lot of
> day reclining with heat and watching television. She indicated she can fix

something to eat and can read a little but cannot stick to one book. She reported her kids and grandchildren visit and help her clean, but she does not go many places.

(R. at 26-27.)

## B. Relevant Medical Records

The ALJ summarized the relevant medical records concerning Plaintiff's physical

impairments as follows:

*** The records document complaints of neck and back pain. In November 2019, imaging showed moderate to severe degenerative disc disease at C5-6 and C6-7 with mild bilateral neural foraminal narrowing and stable retrolisthesis, multilevel degenerative disc disease of the thoracic spine, and mild degenerative disc disease of the lumbar spine (Exhibit 9F/13). Reversal of normal cervical curvature with arthritic changes was also noted throughout the cervical spine (Exhibit 1F). There was minimal backward slippage of C5 on C6 without instability. Severe disc height loss was noted at the C5-6 and C6-7 levels. In the midback area, mild-to-moderate arthritic changes were seen, as well as a right-sided thoracic scoliotic curve and a mild low back curve. Arthritic changes were also noted at L3-4 and L4-5 with small bone spurs. Other treatment notes from November 2019, however, document no deformities of the back/musculoskeletal system, with [Plaintiff] exhibit equal strength (Exhibit 12F/16).

[Plaintiff] underwent a physical consultative examination with Christine Rukamp, D.O., in July 2020 at which time she reported low back pain, but noted that her mental health was the primary reason she could not work (Exhibit 5F). Upon examination, [Plaintiff] exhibited grossly normal motor and sensation in the bilateral upper and lower extremities and [Plaintiff] was able to ambulate normally. She was unable to touch her toes, but was able to bend forward easily. She exhibited a positive seated left straight leg raise and had slightly reduced range of motion with cervical forward flexion, but otherwise retained normal range of motion.

In August 2020, [Plaintiff] presented with an acute left first toe proximal phalanx fracture (Exhibit 12F/92). Imaging showed multiple screws in the region of the tarsal bones and proximal first through fourth metatarsals with fusion as well as a minimally displaced fracture of the medial distal aspect of the proximal phalanx of the left great toe extending to the IP joint (Exhibit 12F/111).

Between November 2020 and June 2021, [Plaintiff] continued to complain of neck, mid, and low back discomfort, wit[h] the addition of tailbone coccyx pain in 2021 (Exhibit 9F). In November 2020, [Plaintiff] reported chronic neck and shoulder pain, worse with working prolonged hours (Exhibit 10F/277). She indicated she used her arm a lot at work and it was wearing her down. She also reported chronic bilateral lumbar back pain worse with prolonged standing, especially at work (Exhibit 10F/281). On examinations, however, she generally exhibited normal strength to the upper and lower extremities with a normal gait and ability to walk heel to toe with good strength, but she had reduced range of motion (Exhibits 9F; 12F/196). She underwent physical therapy, but had to stop for a period of time after an assault in December 2020, though she did get a transcutaneous electronic nerve stimulation (TENS) unit to assist with pain relief. In April 2021, she reported physical therapy was not helping but the TENS unit was (Exhibit 10F/199). She was also noted to not be taking her Flexeril as prescribed. In August 2021, [Plaintiff] was noted to be moving all four extremities without difficulty (Exhibit 11F/156).

(R. at 27-28.)

The ALJ summarized the relevant medical records concerning Plaintiff's mental health

impairments as follows:

Mentally, the records document depression, anxiety, bipolar disorder, PTSD, and substance use issues. In November 2019, [Plaintiff] was noted to be alert with appropriate mood, manner, grooming, personal hygiene (Exhibit 12F/16). In May 2020, [Plaintiff] was alert with normal appearance, mood, behavior, affect, thought content, and judgment (Exhibit 15F). Treatment notes from June 2020 and August 2020 document a history of domestic violence, PTSD, anxiety, and flashbacks (Exhibit 10F/280). During her physical consultative examination in July 2020, the claimant reported that her mental health problems were the primary reason that she could not work, but she exhibited a normal mood and affect (Exhibit 5F). Later that month, she underwent a psychological consultative examination with Kevin Corbus, Psy.D. (Exhibit 6F). She was noted to have average intellectual functioning and was able to understand and follow directions during the evaluation. She performed average on memory/recall tasks and was able to apply instructions requiring average intellectual functioning. She presented as fleetingly able to concentrate on questions and tasks. Her interaction with the examiner during the evaluation was adequate and she indicated she maintained good relationships with family with no interpersonal problems noted with supervisors, coworkers, and

customers. Still, [Plaintiff] indicated she left each job because people around her too much was overwhelming and she started to get paranoid. She reported a significant amount of anxiety, fear, and paranoia related to her past traumas and abuse she had experienced. She also noted significant stressors, but reported having some social supports.

In September 2020, [Plaintiff] reported that she wanted help setting boundaries with family (Exhibit 13F/1-3). She noted PTSD triggers, anxiety, and paranoia sometimes, but she exhibited a normal mental status examination other than poor remote memory. Treatment notes from November 2020 document [Plaintiff] to be alert and oriented with appropriate mood and manner (Exhibit 12F/156). She exhibited a normal mental status examination, except for poor remote memory, though she retained good attention/concentration and was oriented and euthymic with appropriate affect and intact functional status (Exhibit 13F/4, 9). [Plaintiff] reported she was assaulted in December 2020 (Exhibit 12F/196). Upon presentation to the hospital, she was alert, oriented, and cooperative, but her mood and manner were anxious and tearful.

Treatment notes from January 2021 through July 2021 repeatedly document [Plaintiff] to have normal mental status examinations, including intact memory, aside from two occasions of depressed mood (Exhibit 13F/11, 13, 15, 17, 19, 22, 24, 27, 29, 32). In April 2021, [Plaintiff] was noted to have a longstanding history of PTSD and anxiety, with both having been exacerbated after she went to a court date (Exhibit 10F/163). In May 2021, [Plaintiff] reported anxiety and fear about Covid, also noting problems with intrusive thoughts of past trauma, paranoia, and a history of abuse (Exhibit 8F/1-17). She noted symptoms, including recurrent depressive thoughts, diminished interest, lack of motivation, nightmares, intrusive thoughts, hypervigilance, and mistrust of others. She was also noted to have persecutory and auditory hallucinations, and presented with a depressed mood and constricted affect, though she had no cognition impairments and her behavior was cooperative. In June 2021, she indicated that she needed medication and endorsed frequent mood swings, impulsive behavior, and racing thoughts (Exhibit 8F/22). Though she still had flashbacks, she indicated that her PTSD symptoms were somewhat better since she had moved. She also indicated that she had been sober for 46 days. Other treatment notes form that time indicate that her cousin had passed away, with her presenting as appropriately sad but denying recent history of depressive symptoms and report good family support (Exhibit 10F/175. In July 2021, [Plaintiff] reported she was doing okay and had improvement with mood swings, racing thoughts, and impulsive behavior with medication (Exhibit 8F/35). She  denied irritability, anger, or aggress, but endorsed paranoia though she felt her anxiety symptoms had improved, as well as her nightmares, hypervigilance, and

avoidance of triggers. The following month, she reported having some anxiety but indicated she had been okay (Exhibit 8F/48). In August 2021, [Plaintiff] was noted to be alert, oriented, and well appearing with appropriate mood and manner (Exhibit 11F/156).

(R. at 28-29.)

## III. ADMINISTRATIVE DECISION

On December 14, 2021, the ALJ issued her decision.  (R. at 16-39.)  The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2025.  (R. at 22.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since January 1, 2019, the alleged onset date.  (*Id.*) The ALJ found that Plaintiff has the severe impairments of degenerative disc and joint disease of the cervical, thoracic, and lumbar spine with scoliosis; multiple screws in the region of the tarsal bones and proximal first through fourth metatarsals with fusion of the left foot;

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

depressive disorder; anxiety; bipolar disorder; post-traumatic stress disorder (PTSD); and, polysubstance use disorder.  (*Id.*)   The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

Before proceeding to Step Four, The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] should be able to tolerate four hours standing and walking and six hours sitting. She should be able to tolerate frequent kneeling, crouching, and ramps or stairs, occasional stooping and crawling, but should avoid ladders, ropes, or scaffolds and hazards, including moving machinery, heavy machinery, and unprotected heights. [Plaintiff] should be able to tolerate simple routine tasks with no fast-paced work or strict production quotas. She should be able to tolerate a position with few detailed instructions, no more than occasional changes and occasional decision-making. She should be able to tolerate occasional but superficial interaction with coworkers, supervisors, and the public, with superficial being that which is beyond the performance of job duties and job functions for a specific purpose and a short duration. She should be able to tolerate changes that are well explained.

(R. at 26.)

At step four of the sequential process, The ALJ determined that Plaintiff is unable to perform her past relevant work as a laborer.  (R. at 31-32.)  Relying on the VE's testimony, the ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a garment sorter, price marker, or assembler.  (R. at 32-33.)  She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since January 1, 2019.  (R. at 33.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

8

## V.    ANALYSIS

Plaintiff sets forth a single contention of error.  Plaintiff contends that the ALJ did not

properly evaluate the prior administrative medical opinions from the non-examining state agency

psychologists, Dercyck Richardson, Ph.D., and Aracelis Rivera, Psy.D., and from the state agency

reviewing physicians, James Cacchillo, M.D., and Abraham Mikalov, M.D., in assessing her RFC.

(ECF No. 8 at PageID 2266-73.)   The Commissioner counters that the ALJ properly considered

the record as a whole, evaluated the opinions in accordance with the appropriate regulations, and

incorporated the limitations supported by the record into the RFC finding. (ECF No. 9 at PageID

2280-90).

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can

still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1) (2012).  An ALJ

must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id.*  The

governing regulations[3] describe five different categories of evidence: (1) objective medical

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources,

and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R.

§§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that

is not objective medical evidence or a medical opinion, including judgments about the nature and

severity of your impairments, your medical history, clinical findings, diagnosis, treatment

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised
regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20
C.F.R. §§ 404.1513(a), 404.1520c (2017).

prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .
>
> * * *
>
> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>>
>> (ii) The existence and severity of your symptoms;
>>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .

(v) . . . your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). If,

however, two or more medical opinions or prior administrative medical findings are equal in

supportability and consistency "but are not exactly the same," an ALJ must also articulate the

other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when

medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is

not required to articulate how he evaluated each opinion or finding individually but must instead

articulate how he considered the opinions or findings from that source in a single analysis using

the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the

regulations explain that the SSA is not required to articulate how it considered evidence from

non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate

the "supportability" and "consistency" of medical source opinions and prior administrative

findings:

> (1) Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her
> medical opinion(s) or prior administrative medical finding(s), the more persuasive
> the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative
> medical finding(s) is with the evidence from other medical sources and nonmedical
> sources in the claim, the more persuasive the medical opinion(s) or prior
> administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor

"concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis,

and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021

WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July

2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)).

The ALJ provided the following discussion and analysis of the prior administrative

medical findings:

> The [ALJ] has read and considered the opinions of the State Agency medical consultants and finds them to be partially persuasive (Exhibits 1A; 2A; 5A; 6A; 7A; 8A). However, given the addition of [Plaintiff]'s foot injury, in conjunction with her continued neck and back issues, the [ALJ] finds that a further reduction to four hours standing and walking and six hours sitting, and never climbing ladders, ropes, or scaffolds, appropriately considers the totality of [Plaintiff]'s physical impairments.

> The [ALJ] has also read and considered the opinions of the State Agency psychological consultants and finds them to generally be persuasive (Exhibits 1A; 2A; 5A; 6A; 7A; 8A). The [ALJ] agrees that [Plaintiff] has no more than moderate mental limitations in every are of mental functioning; however, some of the limitations have been reframed/further defined herein. For example, the particular number of steps has not been adopted, as almost any task can be subdivided into additional steps, which renders the number of steps useless as a metric of functionality. The [ALJ] has adopted pace/production limitations that are generally consistent with the State Agency. Additionally, the [ALJ] has provided further definition for superficial contact as described in the residual functional capacity herein.

(R. at 31.)

Here, the Commissioner maintains that the ALJ properly considered the record as a whole

and properly evaluated the opinions in accordance with the appropriate regulations.  (ECF No. 9 at

PageID 2280-90).  The Commissioner's argument merits little discussion.  The ALJ utterly failed

to discuss the supportability and consistency factors in 20 C.F.R. § 404.1520c when evaluating the prior administrative findings of the state agency non-examiners.

The Commissioner contends that the ALJ properly evaluated the persuasiveness of the state agency opinions because she discussed the medical evidence before discussing these opinions in her decision.  (Def. Memo in Opp, ECF No. 9 at pp. 5-6.)  The Commissioner also argues that asking the ALJ to apply the supportability and consistency factors—which Commissioner's own regulations describe as the two most important factors—is a "veiled attempt to have [the Court] reweigh the evidence." (*Id*. at p. 7.)  The Undersigned finds these arguments to be wholly without merit.

The ALJ's errors in failing to follow the mandatory requirement to articulate her findings on the factors of supportability and consistency have absolutely nothing to do with asking the Court to reweigh any evidence.  Indeed, clearly the Commissioner is asking the Court to reweigh the evidence by asking the Court to search the ALJ's decision and conjure up the myriad ways in which the consistency and supportability factors could have been applied to the record evidence.  If this were the case, ALJs would never have to evaluate opinion evidence and administrative findings for supportability or consistency as long as they generally summarized the record or cited some evidence elsewhere in their decisions. When citing to the record evidence in support of his or her conclusion, it is not sufficient that the ALJ previously provided an extensive review of the record evidence before discussing the opinions.  *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D.

14

Mich. 2021); *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at

*5 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J), *report and recommendation adopted,* No.

3:20-cv-410, 2021 WL 5235326, at *1 (S.D. Ohio Nov. 10, 2021) (Rice, D.J.) (remanding

and holding that the ALJ did not satisfy the mandate to discuss the supportability factor by

virtue of her earlier recitation of Plaintiff's entire medical record and identification of

instances where the medical records did not support a finding of disability).  Rather, ALJs

must explicitly cite the evidence on which they rely to support their finding as to the

persuasiveness of the opinion.  While the explanation need not be lengthy, the ALJ must

substantively engage in the supportability and consistency analysis.  The ALJ is obligated

"in the first instance to show his or her work, *i.e.,* to explain in detail *how the factors*

*actually were applied* in each case, to each medical source."  *Hardy*, 554 F. Supp. 3d at

907.

The Commissioner also contends that because the ALJ's RFC accounted for the

prior administrative findings, remarking that "the ALJ's mental RFC finding in this case

was generally consistent with the prior administrative findings" and is, "in some ways …

more restrictive," remand would be "a useless and meaningless formality." (Def. Memo in

Opp., ECF No. 9 at pp. 8-10.)  The Undersigned disagrees.  The fact the ALJ's RFC is

consistent with the prior administrative findings turns the analysis on its head.  Moreover,

because these prior administrative findings are central to the ALJ's findings, it heightens,

not lessens, the ALJ's articulation requirements.

Here, the ALJ engaged in no substantive discussion at all as to why the non-examining, non-treating consultants' opinions were found to be partially or generally persuasive. These medical opinions were important in supporting ALJ's RFC determination that Plaintiff was able to do "light work" with restrictions. This is particularly problematic in this case because consultative examiner Christine Rukamp, D.O. found that, based on Plaintiff's history and her consultative examination, Plaintiff "would only be appropriate for sedentary work in which she would not be able to stand for more than 2 hours or lift more than 10 pounds." (R. at 508.) The Court cannot meaningfully review whether substantial evidence supported his persuasiveness analysis because it would be required to engage in an odyssey of speculation.

While the new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of

16

articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability

determination was supported by substantial evidence." *Id.*

Here the ALJ failed to comply with the mandatory requirements of 20 C.F.R. § 404.1520c.

Under these circumstances, the Undersigned cannot find that substantial evidence supports the

decision.

## VI.    CONCLUSION

For these reasons, it is therefore **RECOMMENDED** that the Court **REVERSE the**

Commissioner of Social Security's nondisability finding and **REMAND** this case under Sentence

Four of § 405(g).

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *See, e.g., Pfahler v. Nat'l Latex

Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate

review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th

Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues

of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:    **January 11, 2024**                     **/s/ *Elizabeth A. Preston Deavers***
                                                  **Elizabeth A. Preston Deavers**
                                                  **United States Magistrate Judge**